UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
LES KRAMSKY,                                            :
                                                        :
                            Plaintiff,                  :
                                                        :
        -against-                                       :        10 Civ. 2638 (HB)
                                                        :
CHETRIT GROUP, LLC, JOSEPH CHETRIT                      :
JUDA CHETRIT, MEYER CHETRIT, and                        :
JACOB CHETRIT                                           :
                                                        :
                            Defendant.                  :
------------------------------------------------------------X        OPINION & ORDER
LES KRAMSKY,                                            :
                                                        :
                            Plaintiff,                  :
                                                        :
        -against-                                       :
                                                        :        10 Civ. 9458 (HB)
CHETRIT GROUP, LLC                                      :
                                                        :
                            Defendant.                  :
------------------------------------------------------------X

**Hon. HAROLD BAER, JR., District Judge:**

This dispute is between Les R. Kramsky ("Plaintiff") and Chetrit Group, LLC, Joseph Chetrit, Juda Chetrit, Meyer Chetrit, and Jacob Chetrit (collectively "Defendants") for breach of contract, nonpayment of wages, promissory estoppel, and religious discrimination. Before the Court are Defendants' motion for summary judgment and Plaintiff's motion to strike evidence included in Defendants' motion. For the following reasons Defendants' motion is granted in part and denied in part, and Plaintiff's motion is denied.

## I. Background[1]

Plaintiff is an experienced real estate attorney who began working for Chetrit Group, LLC on April 20, 2009. Prior to working for Chetrit Group, LLC Plaintiff owned a private law practice, which he gave up near the time he began working for Chetrit Group, LLC. At or about

---

[1] Citations to the Second Amended Complaint in Chetrit I will be referred to as "Second Am. Compl." Citations to the Complaint in Chetrit II will be referred to as "Compl."

1

the time he began working for Chetrit Group, LLC, Plaintiff signed an employment agreement ("the Agreement") that designated him as a "Consultant (Independent Contractor)" for a period of 90 days and as a "W-2 Employee" thereafter.  None of the Defendants signed the Agreement.

Following the initial 90 day period, Plaintiff was not designated as a W-2 employee, although he repeatedly asked Defendants to do so.  Plaintiff threatened to report Defendants to the Labor Department for not making him a W-2 employee and failing to place him on the company's health insurance plan.  Plaintiff alleges that he was hired at least in part because Defendants believed that he was an Orthodox Jew and that when Defendants learned he was not Orthodox, he was treated differently.[2]  Plaintiff was terminated in January 2010.

Plaintiff filed his first action (hereinafter "Chetrit I") on March 24, 2010, which was later amended on April 16, 2010 and then on May 6, 2010.  Chetrit I pleads causes of action for: (1) promissory estoppel; (2) religious discrimination in violation of New York City Administrative Code § 8-502(a), *et seq.*; (3) being made to suffer smoking in the workplace, and (4) retaliation for his complaints about smoking, in violation of New York City Administrative Code § 17-504; (5) nonpayment of wages in violation of New York State Labor Law § 198, *et seq.*; (6) retaliation in violation of New York State Labor Law § 215; and (7) breach of contract.  On November 16, 2010, the Court dismissed Plaintiff's third, fourth and sixth causes of action.

On December 20, 2010, after receiving a Right to Sue letter, Plaintiff filed another action under Title VII (hereinafter "Chetrit II") seeking redress for Defendants' alleged religious discrimination.  By order dated January 10, 2011, this Court consolidated Chetrit I and Chetrit II. On March 3, 2011, Defendants filed the present motion for summary judgment, and on April 13, 2011 Plaintiff moved to strike affidavits and certain documents submitted by Defendants in support of their motion for summary judgment.

## II.  Motion to Strike

Plaintiff moves pursuant to Rule 56(e) to strike paragraphs 2, 4, 5, 7, 8, 10, 12, 13, 16, 17 and 20 of the Affidavit of Joseph Chetrit dated October 18, 2010 ("Chetrit Affidavit"), and

---

[2] For example, Plaintiff alleges that he was no longer invited to meetings or trusted with blank checks, individual Defendants would speak in Hebrew in his presence, and work normally assigned to him would be reassigned to outside Orthodox Jewish counsel.  Additionally, on multiple occasions an Orthodox Jewish Rabbi visited Chetrit Group, LLC and asked Plaintiff to engage in a religious ceremony, despite Plaintiff informing the Rabbi that he was uncomfortable doing so.

exhibits K, M, and N1-N6 of the Affidavit of Jordan Sklar dated March 4, 2011 ("Sklar Affidavit").[3]

A district court has broad discretion to decide whether to admit or exclude evidence on a motion for summary judgment. *Raskin v. Wyatt Co.*, 125 F.3d 55, 65-66 (2d Cir. 1997) ("[I]t is appropriate for district courts to decide questions regarding the admissibility of evidence on summary judgment."). Rule 56(e) provides that on a summary judgment motion, "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). A court may "strike portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements." *Hollander v. American Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir. 1999).

With respect to the Chetrit Affidavit, Plaintiff argues that paragraphs 2, 4, 5, 7, 8, 10, 12, 13, 16, 17 and 20 are hearsay and not based on the affiant's personal knowledge. Defendants argue that as a principal of Chetrit Group, LLC, Joseph Chetrit is intimately connected with its daily operations and has personal knowledge about the affirmations at issue. After reviewing the Chetrit Affidavit, this Court finds that the statements contained in ¶¶ 2, 3, 8, 10, 13, 16, 17, and 20 are based on personal knowledge. To the extent that portions of ¶¶ 4, 7, and 12 are not based on personal knowledge, the Court will not consider those portions in resolving the motion.

Turning to the exhibits to the Sklar Affidavit, Plaintiff argues that they are inadmissible because the exhibits are unauthenticated, incomplete, and hearsay.[4] The exhibits that contain hearsay are business records. Where the Defendants would have the opportunity to authenticate these exhibits at trial, the Court will not strike them at this stage. However, to the extent that Plaintiff disputes the authenticity of these exhibits or argues that the exhibits are not self-authenticating, this Court will not consider them undisputed for the purposes of the summary

---

[3] In a May 27, 2011 letter, Plaintiff retracted its motion to strike exhibit L, a copy of the purported Employment Agreement between Plaintiff and Defendants.

[4] Exhibit K consists of an online advertisement from Lucy Basdeo, Controller, Chetrit Group, LLC, seeking a "full time in house Real Estate Attorney," as well as Plaintiff's response expressing interest in the advertised position. Exhibit M contains an invoice sent to Chetrit Group, LLC, by Clifton Budd & DeMaria, LLP and copies of two checks paid to Sukenik, Segal & Graff, P.C. Exhibits N1-N6 contain the general ledgers of MRI Management 40, a purported affiliate of Chetrit Group, LLC.

judgment motion. Therefore, Plaintiff's motion to strike from the record affidavits and documents submitted by Defendants in support of their motion for summary judgment is denied.

### III. Motion for Summary Judgment

#### A. Legal Standard

A motion for summary judgment must be granted if the moving party shows that "there is no genuine issue as to any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities and draw all inferences against the moving party. *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 205 (2d Cir. 2005). Summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

#### B. Breach of Contract

Plaintiff brings a claim for breach of contract, alleging that Defendants promised to classify Plaintiff as a W-2 employee after a 90 day trial period as a 1099 employee (independent contractor) and that Defendants breached that promise when they continued to treat Plaintiff as a 1099 employee following the 90 day period.

In New York, to sustain a claim for breach of contract, a plaintiff must establish: (1) the existence of an agreement; (2) due performance of the contract by the party alleging the breach; (3) a breach; and (4) damages resulting from the breach. *Goltens N.Y. Corp. v. Golten*, 2009 U.S. Dist. LEXIS 33214, at *7-8 (S.D.N.Y. Apr. 20, 2009) (citing *First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998)). Defendants argue that Plaintiff has failed to identify any discernable damage as a result of Defendants' alleged breach of contract.

Plaintiff argues that he was deprived of compensation for unused sick and vacation days because he was classified as a 1099 employee rather than a W-2 employee. Plaintiff admits that the Agreement does not include a provision for unused vacation and sick time. Plaintiff argues that if he were classified as a W-2 employee he would have received the standard pay for unused vacation and sick time dictated by company policy. However, Plaintiff has supplied no evidence

that Chetrit Group, LLC had a "policy" of "reimbursing" employees (but not independent contractors) for unused sick or vacation days. All that Plaintiff alleges is that he was advised by the Defendants that it was company policy that he would have ten sick/personal days and ten vacation days per calendar year effective immediately and that any unused portion would carry over to the following year. *See* 04/13/2006 Decl. of Les Kramsky ("Kramsky Decl.") ¶ 20. Plaintiff has provided no evidence to suggest that he would be entitled to compensation for any unused portion of those days.

Plaintiff also alleges that but for Defendants' discrimination, he would have completed a year of service and been entitled to $30,000 in bonus compensation. However, this claim for damages does not arise out of Defendant's alleged breach of contract, but out of the Plaintiff's discrimination. Additionally, even if Plaintiff were classified as a W-2 employee, the Agreement indicates that after the 90 day trial period, "either party may terminate General Counsel's employment, with each party having no liability toward the other." There is no evidence that Plaintiff would have been retained through the period required to receive a bonus.[5] Therefore, even if there was a contract which Defendants breached, Plaintiff has failed to identify any disputed issue of material fact with respect to damages, and Defendants are entitled to judgment as a matter of law on that claim.

### C. Promissory Estoppel

Plaintiff brings a claim for promissory estoppel alleging that Defendants promised him "a long-term position as General Counsel and further promised to provide bonuses and increased salary and other compensation over time," and that Plaintiff shut down his private legal practice in reliance on those promises. Second Am. Compl. ¶¶ 80-85. Plaintiff alleges that he has suffered damages as a result of his reliance and subsequent termination.

It is well established that New York law does not recognize promissory estoppel in the employment context. *See Rojo v. Deutsche Bank*, 2010 U.S. Dist. LEXIS 62796, at *23 (S.D.N.Y. June 23, 2010) (consolidating cases). So to the extent that Plaintiff would prevail in

---

[5] Additionally, Plaintiff alleges that he had to "beg for health insurance reimbursements" but does not allege that he failed to receive them. Kramsky Decl. ¶¶ 27- 28. Plaintiff also alleges that he spent money on attorneys' fees to recover monies owed to him pursuant to the employment agreement, but does not provide evidence as to what those monies are other than what this Court has considered and rejected in this Opinion.

his argument that he was an employee (or should have been), this claim must be dismissed without further analysis.

Further, Plaintiff cannot cognize a claim for promissory estoppel. A claim for promissory estoppel under New York law requires: (1) a clear and unambiguous promise; (2) reasonable and foreseeable reliance by the party to whom the promise was made; and (3) the person to whom the promise was made relied on the promise to his or her detriment. *Henneberry v. Sumitomo Corp. of Am.*, 532 F. Supp. 2d 523, 533 (S.D.N.Y. 2007) (citing *Esquire Radio & Elecs., Inc. v. Montgomery Ward & Co., Inc.,* 804 F.2d 787, 793 (2d Cir. 1986)).

Plaintiff has failed to identify a "clear and unambiguous promise" of continuous employment and that his reliance was reasonable. Regardless of whether Defendants offered Plaintiff a "long-term position" following the 90-day trial period or simply the 90-day trial period alone, the issue is immaterial because neither scenario amounts to a clear and unambiguous promise of continuous employment. *See, e.g.*, *Dalton v. Union Bank of Switzerland*, 520 N.Y.S.2d 764, 766 (N.Y. App. Div. 1987) ("The fact that defendant promised plaintiff employment at a certain salary with certain other benefits, which induced him to leave his former job and forego the possibility of other employment in order to remain with defendant, does not create a cause of action for promissory estoppel."); *see also Pancza v. Remco Baby, Inc.*, 761 F. Supp. 1164, 1172 (D.N.J. 1991). At most Plaintiff would be an employee "at will," which can hardly constitute a clear and ambiguous promise of long term employment.

Moreover, such an "at will" employment arrangement renders any reliance on a representation of continuous employment unreasonable. *See Marino v. Oakwood Care Ctr.*, 5 A.D.3d 740, 741 (2d Dept. 2004) ("Since the plaintiff was offered only at-will employment, she cannot establish reasonable reliance, a necessary element to recover damages . . . [for] promissory estoppel."); *see also Skillgames, LLC v. Brody*, 1 A.D.3d 247, 250 (1st Dept. 2003). Therefore, Plaintiff cannot cognize a claim for promissory estoppel, and Defendants' motion for summary judgment is granted as to this claim.

### D. Nonpayment of Wages

Plaintiff alleges that Defendants violated N.Y. Labor Law § 198, *et. seq.*, by (i) requiring Plaintiff to continually ask and beg for certain health insurance reimbursements, (ii) failing to pay Plaintiff for wages purportedly owed for unused vacation and sick days, and (iii) failing to pay a one-year bonus of $30,000. Plaintiff contends that under the Agreement he was to be

treated as a W-2 employee following the 90-day trial period and that Defendants owe him this money as a former employee.  Defendants contend that Plaintiff was always treated as an independent contractor and that Plaintiff is not entitled to nonpayment of wages under the law.  Regardless of whether Plaintiff should have been classified as a W-2 employee or a 1099 employee, Plaintiff cannot cognize a claim for unpaid wages.

In order to state a claim under New York Labor Law, "a plaintiff must first demonstrate that he or she is an employee entitled to its protections."  *Hernandez v. Chefs Diet Delivery, LLC*, 915 N.Y.S.2d 623, 624 (N.Y. App. Div. 2001) (internal quotation marks and citations omitted).  While § 190 defines an employee as "any person employed for hire by an employer in any employment," N.Y. Labor Law § 190(2), "this definition excludes independent contractors."  *Hernandez*, 915 N.Y.S.2d at 624.  Therefore, to the extent that Plaintiff was an independent contractor, he cannot cognize a claim under § 198, *et. seq.*

Even if Plaintiff were an employee under the law, his claim would still fail.  Under § 190, the term "wages" is defined as "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis. The term 'wages' also includes benefits or wage supplements as defined in [§ 198-c]." § 190(1).  § 198-c defines "benefits or wage supplements" to include "reimbursement for expenses; health, welfare and retirement benefits; and vacation, separation or holiday pay." § 198-c (2).  Thus, at first glance Plaintiff's claims regarding health insurance reimbursements, vacation and sick time, and bonus payment fall within the scope of "wages."  However, § 198-c (3) also provides in pertinent part that "this section shall not apply to any person in a bona fide executive, administrative, or professional capacity whose earnings are in excess of nine hundred dollars a week."

Plaintiff alleges that he was employed as General Counsel earning a salary of $150,000 per annum.  Whether Plaintiff was "General Counsel" or an "in house real estate attorney," such employment qualifies as "professional."  *See Zito v. Badillo*, 32 A.D.3d 768, 821 N.Y.S.2d 553 (1st Dept. 2006) (holding that the plaintiff, an attorney, "has no cognizable claim under Labor Law § 198").  Moreover, Plaintiff's $150,000 annual salary amounted to $2,884.60 a week, which is over three times the statutory cut off.  Therefore, Plaintiff cannot cognize a claim for unpaid wages, and Defendants' motion for summary judgment is granted as to this claim.

 **E.  Discrimination Claims**

As a threshold matter, the parties dispute what discrimination claims are presently before the Court. In Chetrit I, Plaintiff's second cause of action alleges discrimination on the basis of his religion in violation of NYC Admin. Code § 8-502(a), *et. seq.* Second Am. Compl. ¶ 87. Plaintiff argues that this pleading alleges hostile work environment, retaliation, and unlawful termination, while Defendants argue that Plaintiff only states a claim for hostile work environment.

On November 16, 2010, this Court denied Defendants' motion to dismiss Plaintiff's second cause of action on the grounds that the claim "does not allege that his termination was due to religious discrimination, only that he was subjected to a hostile work environment while employed." To the extent that Plaintiff's second amended complaint alleges claims for retaliation and unlawful termination, Plaintiff waived those claims by electing to pursue causes of action in retaliatory discharge pursuant to N.Y. Labor Law § 740 in Chetrit I. Therefore, the only remaining discrimination claim in Chetrit I is for hostile work environment under New York City Administrative Code § 8-502(a), *et seq.*

In Chetrit II, Plaintiff alleges under Title VII that he was "subjected to a religiously offensive hostile work environment and was then unlawfully terminated from his employment solely because of his religion in violation of Title VII of the Civil Rights Act of 1964." Compl. ¶ 1. Plaintiff argues that his Complaint sets forth claims for hostile work environment, retaliation, and unlawful termination, while Defendants contend that this Complaint only contains hostile work environment and unlawful termination allegations. Given the liberal construction afforded to employment discrimination claims, Plaintiff has sufficiently plead claims for religious discrimination, hostile work environment, and retaliation under Title VII. *See Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 512 (2002) (stating that an employment discrimination complaint "must include only a short and plain statement of the claim . . . [that] give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests") (internal quotation marks and citations omitted); *see also Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007).[6]  I will

---

[6] The waiver provision of § 740(7) is not applicable to the claims brought under Title VII. While courts in the Second Circuit have found that § 740(7) does waive federal causes of action, *see Beers v. Kaiser Permanente Northeast Div.*, 1999 U.S. Dist. LEXIS 19961 at *17 (N.D.N.Y. Dec. 15, 1999) (precluding recovery under Title VII for claims that arose or transpired concurrently with the alleged retaliation); *see also Nadkarni v. N. Shore-Long Island Jewish Health Sys.*, 2003 U.S. Dist. LEXIS 26552 at *17 (E.D.N.Y. July 31, 2003) (waiving claims under the Americans with Disabilities Act and the Family and Medical Leave Act pursuant to § 740(7)), a separate line of cases recognizes that allowing such a waiver raises important Constitutional concerns. *See Nicholls v. Brookdale*

address the remaining claims in Chetrit I and II for religious discrimination, hostile work environment, and retaliation in turn.

### 1. *Religious Discrimination*

Plaintiff's remaining claim for religious discrimination is brought under Title VII of the Civil Rights Act of 1964, which provides in pertinent part:

> It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion, . . .; or to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . religion.  42 U.S.C § 2000e-2(a).

Religious discrimination claims arising under Title VII are evaluated under the burden-shifting framework set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Dawson v. Bumble & Bumble*, 398 F.3d 211, 216 (2d Cir. 2005).  To establish a *prima facie* case of discrimination, a plaintiff bears the burden to establish that: "(1) he is a member of the protected class; (2) he is qualified for his position; (3) he has suffered an adverse employment action; and (4) the circumstances surrounding that action give rise to an inference of . . . discrimination." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) (citing *McDonnell Douglas*, 411 U.S. at 802); *see also Weinstock v. Columbia University*, 224 F.3d 33, 42 (2d Cir. 2000).  If a plaintiff succeeds in proving a prima facie case, then he is aided by a presumption of discrimination.  *See, e.g.*, *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001); *James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000).  The presumption of discrimination may be rebutted if the defendant proffers a "legitimate, non-discriminatory reason" for the adverse employment action.  If successful, the presumption of discrimination disappears and the plaintiff bears the ultimate burden of proving

---

*Univ. Hosp. Med. Ctr.*, 2004 U.S. Dist. LEXIS 12816 at *17 (E.D.N.Y. July 9, 2004) (finding that the waiver provision does not apply to claims under federal law because otherwise "serious federal constitutional problems . . . would be raised were a state statute [deemed] to nullify a federal provision") (quoting *Collette v. St. Luke's Roosevelt Hosp.*, 132 F. Supp. 2d 256, 266 (S.D.N.Y. 2001)) (internal citations omitted).  This Court will construe Section 7 narrowly in order to avoid such Constitutional issues.  *See Solid Waste Agency of Northern Cook County v. U.S. Army Corps of Engineers*, 531 U.S. 159, 148 L. Ed. 2d 576, 121 S. Ct. 675, 683 (2001) ("Whenever possible, an ambiguous statute should be construed to avoid constitutional questions.").

that the employer's proffered reason was a pretext for discrimination. *Roge,* 257 F.3d at 168; *James*, 233 F.3d at 154.

Plaintiff alleges that he was discriminated against once Defendants found out that he was not an Orthodox Jew and he complained about the disparate treatment he received in the workplace. Although Defendants do not dispute that Plaintiff is Jewish, qualified for a position of General Counsel, and was terminated, Defendants contend that the termination did not take place under circumstances giving rise to an inference of discrimination. Plaintiff argues that Defendants hired him because they believed him to be an Orthodox Jew, and upon learning that he was not an Orthodox Jew, Defendants tried to convert him to Orthodox Judaism by allowing a Rabbi to enter the premises several times a week and engage Plaintiff in Orthodox rituals, which Plaintiff refused, and it was then that Defendants began diverting Plaintiff's work assignments and responsibilities to others, and eventually Plaintiff was terminated. Plaintiff argues that the circumstances surrounding his termination, his previously unblemished employment record, and high level of work performance, give rise to the inference of discrimination.

There are genuine issues of material fact in dispute regarding whether the circumstances surrounding the termination give rise to an inference of discrimination. The parties dispute whether Defendants believed Plaintiff to be an Orthodox Jew at the time he was hired, whether Defendants provided work within the scope of Plaintiff's duties to individuals whom Defendants believed to be Orthodox Jews, and whether Defendants condoned the actions of the Rabbi.

Additionally, Defendants argue that assuming that Plaintiff has stated a prima facie case of religious discrimination, the presumption of discrimination is rebutted by Defendants' legitimate non-discriminatory reasons for terminating Plaintiff, i.e., that Chetrit Group, LLC did not require the services of an in house attorney. Defendants argue that Chetrit Group, LLC did not recognize a savings in the area of litigation after Plaintiff started in his position; however, Plaintiff argues that he was not hired in a capacity as a litigator but as General Counsel. Defendants have not met their burden at this stage to show a legitimate non-discriminatory reason for terminating Plaintiff. Accordingly, Defendants' motion is denied as to this claim.

   *2. Hostile Work Environment*

Plaintiff's claim for hostile work environment is brought under Title VII and the city administrative code. To establish a hostile work environment claim under Title VII, "a plaintiff must demonstrate that (1) he subjectively perceived the environment to be abusive; (2) the

conduct alleged objectively created an environment that a reasonable person would find hostile or abusive; and (3) that the work environment was abusive to employees because of their race, gender, religion, or national origin." *Cunningham v. New York State Dept. of Labor*, 326 Fed. App'x 617, 620 (2d Cir. 2009) (citation and internal quotation marks omitted) (emphasis omitted).  Additionally, the plaintiff must show "a specific basis for imputing the conduct creating the hostile work environment to the employer." *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) (citing *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002)).

The elements of a claim for hostile work environment under the city administrative code are substantially similar to those under Title VII.  *See Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 310 (2004); *Fleming v. MaxMara USA, Inc.*, 644 F. Supp. 2d 247, 267 (E.D.N.Y. 2009).  However, hostile work environment claims under the city code do not require the harassment leading to the hostile work environment to be as "severe or pervasive" as that required under Title VII.  *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 76 (1st Dept. 2009); *Fleming*, 644 F. Supp. 2d at 268.

Plaintiff alleges that after Defendants discovered that he was not Orthodox Jewish, Defendants began to harass him about his religious beliefs, second guess and sabotage his work, speak in Hebrew in his presence to make him feel isolated and ensure he would not understand their work-related conversations, and condone constant pressure from a Rabbi to wear religious apparel and worship during work hours.  Defendants deny these allegations, and disputed issues of material fact remain before the Court.  Accordingly, summary judgment is denied as to the claims for hostile work environment brought under federal and city law.

    *3.  Retaliation*

Plaintiff's remaining retaliation claim is brought under Title VII.  To make a prima facie showing of retaliation under Title VII, a plaintiff must demonstrate that: (i) he engaged in a protected activity; (ii) the employer was aware of the protected activity; (iii) the employer took adverse action; and (iv) a causal connection existed between the protected activity and the adverse action.  *See Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 608 (2d Cir. 2006); *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 66 (2d Cir. 1998).  Furthermore, a successful retaliation claim "is not dependent on the merits of the underlying discrimination complaint." *Matya v. United Ref. Co*., 323 Fed. App'x 65, 67 (2d Cir. 2009).  Once the plaintiff makes a prima facie case of retaliation, then the defendant has the burden to demonstrate a legitimate and

nondiscriminatory reason for his or her actions, and then the burden shifts back to Plaintiff to show the proffered reason was pretextual. *See Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005).

Plaintiff alleges that he complained about suffering religious discrimination, and material facts remain in dispute. Accordingly, summary judgment is denied as to this claim.

## IV. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED as to Plaintiff's first, fifth, and seventh causes of action in Chetrit I, and DENIED as to Plaintiff's second cause of action in Chetrit I and first cause of action in Chetrit II. Plaintiff's motion to strike is DENIED. The Clerk of the Court is instructed to close these motions and remove them from my docket.

**SO ORDERED.**

New York, New York
June 13, 2011

Hon. Harold Baer, Jr.
U.S.D.J.